UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBERTINA BRICENO, | No. 2:19-cv-1259 DB |
| Plaintiff, | |
| v. | ORDER |
| ANDREW SAUL, Commissioner of Social Security[1], | |
| Defendant. | |

This social security action was submitted to the court without oral argument for ruling on plaintiff's motion for summary judgment and defendant's cross-motion for summary judgment.[2] Plaintiff's motion argues that the Administrative Law Judge erred by finding that plaintiff had not rebutted the presumption of continuing non-disability and improperly rejected medical opinion evidence.

////

---

[1] Andrew Saul became the Commissioner of the Social Security Administration on June 17, 2019. See https://www.ssa.gov/agency/commissioner.html (last visited by the court on July 30, 2019). Accordingly, Andrew Saul is substituted in as the defendant in this action. See 42 U.S.C. § 405(g) (referring to the "Commissioner's Answer"); 20 C.F.R. § 422.210(d) ("the person holding the Office of the Commissioner shall, in his official capacity, be the proper defendant").

[2] Both parties have previously consented to Magistrate Judge jurisdiction over this action pursuant to 28 U.S.C. § 636(c).  (See ECF Nos. 7 & 8.)

1

For the reasons explained below, plaintiff's motion is granted, the decision of the Commissioner of Social Security ("Commissioner") is reversed, and the matter is remanded for further proceedings consistent with this order.

## PROCEDURAL BACKGROUND

On September 15, 2016, plaintiff filed an application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act ("the Act") alleging disability beginning on June 1, 2015. (Transcript ("Tr.") at 19, 209-18.) Plaintiff's alleged impairments included anxiety, depression, herniated discs, and sciatic nerve. (Id. at 231.) Plaintiff's application was denied initially, (id. at 146-49), and upon reconsideration. (Id. at 156-60.)

Thereafter, plaintiff requested a hearing which was held before an Administrative Law Judge ("ALJ") on April 12, 2018. (Id. at 42-69.) Plaintiff was represented by an attorney and testified at the administrative hearing. (Id. at 42-45.) In a decision issued on August 29, 2018, the ALJ found that plaintiff was not disabled. (Id. at 37.) The ALJ entered the following findings:

> 1. The claimant has not engaged in substantial gainful activity since September 15, 2016, the application date (20 CFR 416.971 *et seq*.).
>
> 2. The claimant has the following severe impairments: degenerative disc disease of the lumbar spine, an anxiety disorder, and a depressive disorder (20 CFR 416.920(c)).
>
> 3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b), except she can frequently climb ramps and stairs, balance, stoop, kneel, and crouch; occasionally crawl and climb ladders; and never climb scaffolds. She is further limited mentally to understanding, remembering, and carrying out simple, routine, and repetitive tasks; using judgment is limited to simple work-related decisions; and can have frequent social interaction with supervisors, co-workers, and the public.
>
> 5. The claimant is capable of performing past relevant work as an embroidery machine operator. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 416.965).

> 6. The claimant has not been under a disability, as defined in the Social Security Act, since September 15, 2016, the date the application was filed (20 CFR 416.920(f)).

(Id. at 22-36.)

On May 31, 2019, the Appeals Council denied plaintiff's request for review of the ALJ's August 29, 2018 decision. (Id. at 1-6.) Plaintiff sought judicial review pursuant to 42 U.S.C. § 405(g) by filing the complaint in this action on July 8, 2019. (ECF No. 1.)

## LEGAL STANDARD

"The district court reviews the Commissioner's final decision for substantial evidence, and the Commissioner's decision will be disturbed only if it is not supported by substantial evidence or is based on legal error." Hill v. Astrue, 698 F.3d 1153, 1158-59 (9th Cir. 2012). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001); Sandgathe v. Chater, 108 F.3d 978, 980 (9th Cir. 1997).

"[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) (quoting Hammock v. Bowen, 879 F.2d 498, 501 (9th Cir. 1989)). If, however, "the record considered as a whole can reasonably support either affirming or reversing the Commissioner's decision, we must affirm." McCartey v. Massanari, 298 F.3d 1072, 1075 (9th Cir. 2002).

A five-step evaluation process is used to determine whether a claimant is disabled. 20 C.F.R. § 404.1520; see also Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). The five-step process has been summarized as follows:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
>
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.
>
> Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled. If not, proceed to step four.

>Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled. If not, proceed to step five.
>
>Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen v. Yuckert, 482 U.S. 137, 146 n. 5 (1987).  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.; Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

## APPLICATION

Plaintiff's pending motion asserts the following two principal claims: (1) the ALJ erred by finding that plaintiff had not rebutted the presumption of continuing non-disability; and (2) the ALJ's treatment of the medical opinion evidence constituted error.[3]  (Pl.'s MSJ (ECF No. 12) at 13-23.[4])

### I.    Presumption of Continuing Non-Disability

Plaintiff argues that the ALJ "erred in his application of the Chavez doctrine" as it pertains to res judicata.  (Id. at 13.)  In this regard, "[t]he principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings."  Chavez v. Bowen, 844 F.2d 691, 693 (9th Cir. 1998); see also Lyle v. Sec. Health & Human Serv., 700 F.2d 566, 568, n. 2 (9th Cir. 1983).

Where the Commissioner has made a determination of non-disability in a prior decision, the prior determination creates a presumption of continuing non-disability for any period after the date of the prior decision.  See Lester, 81 F.3d at 827-28; Chavez, 844 F.2d at 693.  To "overcome the presumption of continuing nondisability arising from the first administrative law

---

[3] Although plaintiff's motion asserts three claims of error, two of those claims concern the treatment of medical opinion evidence.  For purposes of clarity and efficiency the court has combined the discussion of those claims.

[4] Page number citations such as this one are to the page number reflected on the court's CM/ECF system and not to page numbers assigned by the parties.

judge's findings of nondisability" the plaintiff "must prove 'changed circumstances' indicating a greater disability." Chavez, 844 F.2d at 693 (quoting Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985)).

Here, the ALJ discussed the "prior decision" and found that although plaintiff had demonstrated "changed circumstances" that were "more physically limiting," plaintiff, nonetheless, had "not rebutted the presumption of non-disability," because those changed circumstances were "not disabling." (Tr. at 20.) This finding was erroneous.

The ALJ here found that plaintiff established new severe impairments of "anxiety and degenerative disc disease of the lumbar spine," which were "changed circumstances," rendering plaintiff "more physically" limited. (Id.) Accordingly, the prior decision was not entitled to res judicata effect. See Drake v. Saul, 805 Fed. Appx. 467, 468 (9th Cir. 2020) ("The ALJ was correct that the ultimate ruling in the October 6, 2011 decision by another ALJ that Drake was not disabled ('2011 Decision') is not entitled to res judicata effect because Drake established the existence of new severe impairments, which constituted 'changed circumstances.'").

Accordingly, plaintiff is entitled to summary judgment on this claim.

**II.    Medical Opinion Evidence**

The weight to be given to medical opinions in Social Security disability cases depends in part on whether the opinions are proffered by treating, examining, or nonexamining health professionals. Lester, 81 F.3d at 830; Fair v. Bowen, 885 F.2d 597, 604 (9th Cir. 1989). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant . . . ." Lester, 81 F.3d at 830. This is so because a treating doctor is employed to cure and has a greater opportunity to know and observe the patient as an individual. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996); Bates v. Sullivan, 894 F.2d 1059, 1063 (9th Cir. 1990).

The uncontradicted opinion of a treating or examining physician may be rejected only for clear and convincing reasons, while the opinion of a treating or examining physician that is controverted by another doctor may be rejected only for specific and legitimate reasons supported by substantial evidence in the record. Lester, 81 F.3d at 830-31. "The opinion of a nonexamining

physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician or a treating physician." (Id. at 831.) Finally, although a treating physician's opinion is generally entitled to significant weight, "'[t]he ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory, and inadequately supported by clinical findings.'" Chaudhry v. Astrue, 688 F.3d 661, 671 (9th Cir. 2012) (quoting Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1228 (9th Cir. 2009)).

### A. Dr. Moris Senegor

Here, plaintiff first challenges the ALJ's treatment of the opinion offered by Dr. Moris Senegor, a treating physician. (Pl.'s MSJ (ECF No. 12) at 16-19.) On January 12, 2017, Dr. Senegor completed a Medical Opinion Regarding Physical Capacity for Work form, opining that plaintiff was impaired in several respects and limited to less than sedentary work. (Tr. at 319-20.) The ALJ acknowledged Dr. Senegor's opinion but afforded it "no weight." (Id. at 33.)

The first reason offered by the ALJ in support of the decision to afford Dr. Senegor's opinion no weight was that "he admitted that the imaging testes were unremarkable[.]" (Id.) That statement, however, is inaccurate. Dr. Senegor examined plaintiff on December 9, 2016, and did find that plaintiff's "x-rays of the lumbar spine dated 04/07/16 . . . are unremarkable." (Id. at 305.) However, the next sentence from Dr. Senegor's report explains that he found "an MRI scan of the lumbar spine dated 05/16/16" revealed "some early disc degeneration at L2-3, L3-4, and L4-5 and facet hypertrophy, right side worse than left, at L4-5 with lateral recess stenosis on the right side at L4-5." (Id.) In this regard, Dr. Senegor did not find that the imaging tests unremarkable.

The ALJ also rejected Dr. Senegor's opinion because "he appeared to have only seen the claimant a few times." (Id.) When an ALJ elects to afford the opinion of a treating physician less than controlling weight, the opinion must be "weighted according to factors such as the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability, consistency with the record, and specialization of the physician." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (citing 20 C.F.R. §

404.1527(c)(2)-(6)).  The ALJ's failure to discuss these factors "alone constitutes reversible legal error."  (Id. at 676.)

Moreover, that Dr. Senegor treated plaintiff—even if on a single occasion—distinguishes his opinion from those of a nonexamining or examining physician.  That the treatment relationship may have been of limited duration cannot serve as a specific and legitimate reason to reject his opinion, otherwise the opinions of nonexamining and examining physicians could always be rejected simply because they were not treating physicians.

The final reason offered by the ALJ was the vague and conclusory assertion that the "longitudinal medical evidence and the claimant's activities of daily living . . . show that she could do at least less than a full range of light work with postural limitations."  (Tr. at 33.)  The ALJ provides no citation, let alone an explanation, in support of this finding.  And it is entirely unclear what "longitudinal medical evidence" or activity of daily living the ALJ found undermined Dr. Senegor's opinion.

In this regard,

> [t]o say that medical opinions are not supported by sufficient objective findings or are contrary to the preponderant conclusions mandated by the objective findings does not achieve the level of specificity our prior cases have required, even when the objective factors are listed seriatim.  The ALJ must do more than offer his conclusions.  He must set forth his own interpretations and explain why they, rather than the doctors', are correct.

Embrey v. Bowen, 849 F.2d 418, 421-22 (9th Cir. 1988); see also Tackett v. Apfel, 180 F.3d 1094, 1102 (9th Cir. 1999) ("The ALJ must set out in the record his reasoning and the evidentiary support for his interpretation of the medical evidence."); McAllister v. Sullivan, 888 F.2d 599, 602 (9th Cir. 1989) ("Broad and vague" reasons for rejecting the treating physician's opinion do not suffice).

Moreover, the ALJ's opinion characterized plaintiff's activities of daily living as including waking "her children," driving them to school, cooking, grocery shopping, "bathing, and grooming with difficulty," etc.  (Tr. at 32.)

> T]he critical differences between activities of daily living and activities in a full-time job are that a person has more flexibility in scheduling the former than the latter, can get help from other persons

7

> . . . and is not held to a minimum standard of performance, as she would be by an employer. The failure to recognize these differences is a recurrent, and deplorable, feature of opinions by administrative law judges in social security disability cases.

Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012).

Accordingly, the ALJ failed to provide a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Senegor's opinion.

### B.  Dr. Raghunath K. Reddy

Plaintiff next challenges the ALJ's treatment of Dr. Raghunath Reddy's treating opinion. (Pl.'s MSJ (ECF No. 12) at 19.)  On November 21, 2016, Dr. Reddy completed a Certificate of Excuse and Return to Work/School form, opining that plaintiff could not perform "physical work," but that "sedentary work" was "ok." (Tr. at 471.)  The ALJ afforded "no weight to Dr. Reddy's opinion" "for the same reasons" the ALJ rejected Dr. Senegor's opinion. (Id. at 33.) Specifically, the ALJ again made the vague and conclusory assertion that "longitudinal medical evidence and the claimant's activities of daily living" showed plaintiff could perform the full range of light work, without any citation or explanation offered in support. (Id.)

As explained above, those vague reasons are neither clear and convincing nor specific and legitimate.  Accordingly, the ALJ's treatment of Dr. Reddy's opinion was also erroneous.

### C.  Dr. Bradley Diagle

Plaintiff also challenges the ALJ's treatment of the opinion offered by Dr. Bradley Diagle. (Pl.'s MSJ (ECF No. 12) at 21-23.)  Dr. Diagle, a psychiatrist, examined plaintiff and completed a Complete Psychiatric Evaluation on November 19, 2016.  (Tr. at 289-94.)  Dr. Diagle opined that plaintiff's limitations ranged from "not limited" in the ability to carry out simple jobs, to mild and moderately limited in several other respects. (Id. at 294.)  The ALJ afforded only "partial weight" to Dr. Diagle's opinion. (Id. at 33.)

The ALJ supported this decision by again relying on the vague and conclusory reference to "longitudinal medical evidence and the claimant's activities of daily living[.]" (Id. at 33.)  This time, however, the ALJ referred to plaintiff's ability "to shop, socially interact with her boyfriend,

////

do errands, and drive places." (Id. at 33-34.) Once again, this was erroneous for the reasons explained above.

The ALJ also relied on a finding that plaintiff "interacted with the undersigned at the hearing without any difficulty." (Id. at 34.) Reliance on such "sit and squirm jurisprudence" is erroneous. See Perminter v. Heckler, 765 F.2d 870, 872 (9th Cir. 1985) ("The ALJ's reliance on his personal observations . . . at the hearing has been condemned as 'sit and squirm' jurisprudence."); Gallant v. Heckler, 753 F.2d 1450, 1455 (9th Cir. 1984) ("The fact that a claimant does not exhibit physical manifestations of prolonged pain at the hearing provides little, if any, support for the ALJ's ultimate conclusion that the claimant is not disabled or that his allegations of constant pain are not credible.").

Moreover, the Ninth Circuit has explained that:

> Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.

Garrison v. Colvin, 759 F.3d 995, 1017 (9th Cir. 2014).

The final reason offered by the ALJ for discrediting Dr. Diagle's opinion was the finding that "importantly, the claimant testified that she did not receive any mental health treatment and does not take any prescription medications for mental problems." (Tr. at 34.) It is true that at the April 12, 2018 hearing plaintiff testified to not currently receiving any mental health treatment. (Id. at 55.) However, the Ninth Circuit has:

> . . . particularly criticized the use of a lack of treatment to reject mental complaints both because mental illness is notoriously underreported and because 'it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.'

Regennitter v. Commissioner of Social Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (quoting Nguyen v. Chater, 100 F.3d 1462, 1465 (9th Cir. 1996)); see also Garrison v. Colvin, 759 F.3d 995, 1018 fn 24 (9th Cir. 2014) ("In other words, we do not punish the mentally ill for occasionally going off their medication when the record affords compelling reason to view such departures from prescribed treatment as part of claimants' underlying mental afflictions.").

Moreover, prior to the April 12, 2018 hearing and during the period at issue, plaintiff received mental health treatment via psychotherapy and medication. (Tr. at 490-91, 529.) Dr. Diagle was aware of this treatment, noting that plaintiff had "been avoiding treatment for a long time but she has recently returned for psychotherapeutic treatment and medication and she appears to be making some progress with therapy and medication[.]" (Id. at. 294.) Despite plaintiff's progress, Dr. Diagle still found that plaintiff was moderately limited in several respects. That, thereafter, plaintiff stopped receiving mental health treatment is not a specific and legitimate reason to reject Dr. Diagle's opinion. Accordingly, the ALJ failed to offer a specific and legitimate, let alone clear and convincing, reason for rejecting Dr. Diagle's opinion.

For the reasons stated above, plaintiff is entitled to summary judgment on the claim that the ALJ's treatment of the medical opinion evidence constituted error.

**CONCLUSION**

With error established, the court has the discretion to remand or reverse and award benefits.[5] McAllister v. Sullivan, 888 F.2d 599, 603 (9th Cir. 1989). A case may be remanded under the "credit-as-true" rule for an award of benefits where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

Garrison, 759 F.3d at 1020. Even where all the conditions for the "credit-as-true" rule are met, the court retains "flexibility to remand for further proceedings when the record as a whole creates

---

[5] Plaintiff's motion also challenges the ALJ's treatment of several other medical opinions. In light of the ALJ's multiple errors, and the court's finding that this matter must be remanded for further proceeding consistent with plaintiff's request, the court need not address these additional challenges. See Janovich v. Colvin, No. 2:13-cv-0096 DAD, 2014 WL 4370673, at *7 (E.D. Cal. Sept. 2, 2014) ("In light of the analysis and conclusions set forth above, the court need not address plaintiff's remaining claims of error."); Manning v. Colvin, No. CV 13-4853 DFM, 2014 WL 2002213, at *2 (C.D. Cal. May 15, 2014) ("Because the Court finds that the decision of the ALJ must be reversed on the basis of the stooping limitation, the Court need not address Plaintiff's remaining contentions.").

serious doubt as to whether the claimant is, in fact, disabled within the meaning of the Social Security Act." Id. at 1021; see also Dominguez v. Colvin, 808 F.3d 403, 407 (9th Cir. 2015) ("Unless the district court concludes that further administrative proceedings would serve no useful purpose, it may not remand with a direction to provide benefits."); Treichler v. Commissioner of Social Sec. Admin.,, 775 F.3d 1090, 1105 (9th Cir. 2014) ("Where . . . an ALJ makes a legal error, but the record is uncertain and ambiguous, the proper approach is to remand the case to the agency.").

Here, plaintiff asks that this matter be remanded for further proceedings. (Pl.'s MSJ (ECF No. 12) at 23.) Plaintiff's request will be granted.

Accordingly, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for summary judgment (ECF No. 12) is granted;

2. Defendant's cross-motion for summary judgment (ECF No. 15) is denied;

3. The Commissioner's decision is reversed; and

4. This matter is remanded for further proceedings consistent with this order.

Dated:  September 23, 2020

_____
DEBORAH BARNES
UNITED STATES MAGISTRATE JUDGE

DLB:6
DB\orders\orders.soc sec\briceno1259.ord

11